**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ANGELA HAWK,                        Case No. 1:20-cv-81

    Plaintiff,                           Cole, J.
                                               Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Angela Hawk filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents five claims of error, all which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

    **I.**     **Summary of Administrative Record**

In November 2016, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income alleging a disability onset date of March 15, 2011, due to mental and physical impairments. (Tr. 15). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On December 6, 2018, ALJ Renita Bivins held an evidentiary hearing at which Plaintiff appeared with counsel.[1] The ALJ heard testimony

---

[1] At the hearing, Plaintiff amended her onset date to December 12, 2013. (Tr. 286).

1

from Plaintiff and an impartial vocational expert. On December 24, 2018, the ALJ denied Plaintiff's applications in a written decision. (Tr. 15-35). Plaintiff now seeks judicial review of the denial of her application for benefits.

Plaintiff was born March 17th, 1975, and was 38 years old as of the date of onset date. (Tr. 33). She reported completing high school and has no past relevant work. (Tr. 33). Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "a spine disorder, osteoarthrosis, hearing loss, a depressive disorder, a bipolar disorder, anxiety, a personality disorder, a post-traumatic stress disorder, and opioid dependency." (Tr. 18). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> She is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours per 8-hour day and sit for 6 hours per 8-hour day with normal breaks. She can occasionally climb ramps and stair, but never climb ladders, ropes, or scaffolds. She can frequently balance, occasionally stoop, occasionally kneel, occasionally crotch, and occasionally crawl. She must avoid concentrated exposure to extreme cold and noise, meaning no more than frequent moderate noise levels. She must avoid all exposure to hazards, such as unprotected heights and noisy, dangerous, moving machinery, she can understand, remember, and carry out simple instructions for routine repetitive tasks with no fast-pace or high production quotas; she is able to maintain sufficient concentration, attention, persistence, and price for simple work; she is able to adapt to minimal or infrequent changes in the work setting and environment. She can work in an environment with no interaction with the public, and occasional interaction with coworkers and supervisors is [sic] on a superficial basis such that the job does not require arbitration, conflict resolution, or persuading others. She is able to be aware of normal hazards and take appropriate precautions. Her medical conditions, symptoms, and pain could be expected to have rendered her off task approximately four

percent of the work period and absent eight days per year after the probationary period.

(Tr. 22). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that although Plaintiff is unable to perform her past relevant work, Plaintiff could perform other work in the national economy including such jobs as cleaner/housekeeper and sub-assembler. Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by 1) failing to properly evaluate Plaintiff's credibility, 2) improperly evaluating Plaintiff's mental impairments: 3) failing to find Plaintiff's obesity to be a severe impairment; 4) improperly evaluating Plaintiff's physical RFC; and 5) improperly relying on her own observations during the hearing. Upon close analysis, I conclude that the ALJ's decision should be affirmed.[2]

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a

---

[2] Errors 1 and 5 involve similar issues and analysis and will be considered together. For the same reasons, errors 3 and 4 will be considered together.

3

"disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination,

4

meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's decision is supported by Substantial Evidence**

*1. Plaintiff's Subjective Complaints*

Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints of pain and did not abide by the dictates of SSR 96-7p.[3] Plaintiff further contends that the ALJ improperly substituted her own opinion for that of medical evidence of record. Plaintiff's contentions lack merit.

The ALJ's assessment, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the

---

[3] However, SSR 96-7p was replaced by a new ruling, SSR 16-3p, Evaluation of Symptoms in Disability Claims, 81 FR 14166, on March 16, 2016. The ALJ's decision was issued on December 24, 2018. Thus, SSR 16-3p applies to the ALJ's decision.

5

ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). The new ruling emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See id.* at *11. Under SSR 16-3p, an ALJ is to consider all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms, including the following factors:

    1. Daily activities;

    2. The location, duration, frequency, and intensity of pain or other symptoms;

    3. Factors that precipitate and aggravate the symptoms;

    4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

    5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

    6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

    7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, 2017 WL 5180304, at *7–8; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p.

Despite clarifying the basis for the analysis of subjective complaints and corresponding elimination of the term "credibility" from the text in order to avoid "character analysis," SSR 16-3p was not intended to substantially change existing law. *See Banks v. Com'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449 at *5 (S.D. Ohio Nov. 20,

2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan. 14, 2019). Thus, it remains the province of the ALJ and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007).

As stated, the primary distinction between SSR 16-3p and the former SSR 96-7p is the elimination of the word "credibility" and clarifying that the focus of the ALJ's evaluation should be on the "consistency" of subjective complaints with the record as a whole. The elimination of the word "credibility" from SSR 16-3p is semantically awkward in applying prior case law, insofar as virtually all of the case law interpreting the former SSR 96-7p uses the catchphrase "credibility determination." Nevertheless, the essence of the regulatory framework remains unchanged. Therefore, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, with few exceptions. *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

Turning to that case law, it is clear that a reversal of the Commissioner's decision based upon error in a credibility/consistency determination requires a particularly strong showing by a plaintiff. Like the ultimate non-disability determination, the assessment of subjective complaints must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further,

a credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Here, in evaluating subjective allegations, the ALJ considered that Plaintiff's subjective allegations were not entirely consistent with the medical evidence and other evidence of record. (Tr. 20-22). *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."). In this regard, the ALJ noted that Plaintiff had the severe physical impairments of a spine disorder, osteoarthritis, and hearing loss and experienced pain and limitations as a result of those impairments (Tr. 18). However, the record showed that the functional limitations stemming from these impairments were not as severe as alleged. In terms of Plaintiff's alleged back pain, a January 2017 x-ray showed only mild degenerative changes (Tr. 24, 1506-07).

The ALJ noted that numerous examinations in the record showed normal strength, sensation, range of motion, and muscle tone. (Tr. 23, 602, 654-56, 666-68, 688-70, 858, 1003, 1326-27, 1344-48, 1433-34, 1474, 1511). Plaintiff's gait and station were also normal. (Tr. 23, 668, 690, 804, 1235, 1273, 1326, 1346, 1414, 1433). Straight leg raise testing was negative throughout the majority of the record, with some exceptions. (Tr. 23-24, 811, 858, 1003, 1035, 1503). The ALJ further detailed that while Plaintiff complained of left ankle pain in January 2017, imaging showed no acute bony abnormalities or

significant degenerative changes. (Tr. 24, 811). The ALJ further noted that Plaintiff complained of left shoulder pain, but an MRI in January 2018 was normal and doctors regularly found full strength and a normal range of motion in her upper extremities. (Tr. 24, 654-55, 666-67, 688-89, 1437, 1474), with rare exceptions. (Tr. 1397, 1413 (3/5 strength in left upper extremity, 5/5 on the right)).

With respect to Plaintiff's mental impairments, the ALJ noted that such impairments caused a number of functional limitations, but also reasonably found that Plaintiff's allegations of disabling symptoms was inconsistent with the medical evidence. As further detailed below, while Plaintiff had a number of abnormal findings on various exams, and the ALJ recognized that she was impulsive and had a history of altercations with customers at her past jobs, her memory, affect, mood, judgment, insight, attention, and concentration were frequently normal and treatment notes often reflected that Plaintiff showed progress. (Tr. 25-30, 484, 502, 510, 516, 519, 522, 525, 527, 602, 606, 652, 815, 829, 888-89, 998-99, 1110, 1012, 1017, 1126, 1031, 1145, 1163, 1170, 1179, 1185-86, 1193, 1195, 1197, 1200, 1202, 1204-05, 1207, 1209, 1212, 1215, 1227, 1397, 1401, 1405, 1409, 1417, 1423, 1433, 1438).

The ALJ also considered Plaintiff's noncompliance with treatment recommendations. In this regard, the ALJ noted that Plaintiff was frequently noncompliant with her medication regime for her mental impairments. (Tr. 26-27, 410, 502, 522, 768, 771, 1122, 1149). At one point, she stated that she had never taken all of her medications as prescribed for a full 30-day period. (Tr. 29, 768). Plaintiff did report that medications worked when she took them at the appropriate dose. (Tr. 25, 1009). She also reported that she was progressing toward treatment goals, was less stressed, and was successful

in managing her symptoms when she took her medications as prescribed. (Tr. 29, 1177). The ALJ also noted that Plaintiff was also noncompliant with treatment recommendations for her physical impairments. Despite being diagnosed with type II diabetes, she was observed drinking soft drinks on multiple occasions and stated that she did not check her blood sugar or regulate her diet. (Tr. 29, 758, 1122, 1143). Further, Plaintiff was discharged from physical therapy due to noncompliance and an inability to adhere to the plan of care. (Tr. 29, 1278). Despite doctors' recommendations, Plaintiff also continued to smoke. (Tr. 31, 55, 1414).

The ALJ also properly considered Plaintiff's daily activities. The ALJ noted that that Plaintiff drove, on average, twice a week for less than ten miles. (Tr. 31). The ALJ also noted that Plaintiff's coping skills included watching movies and taking walks, that she went out to dinner with her family, that she was able to prepare some food, and did some household chores. Plaintiff also watched TV, read, wrote in a journal, and spent time with her boyfriend, best friend, and mother. (Tr. 28, 313-14, 316). The ALJ reasonably considered that these activities were inconsistent with Plaintiff's allegations of total disability. See *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441–42 (6th Cir. 2017) (reasoning that the ALJ's citation of "daily activities" functions as evidence undercutting Plaintiff's allegations rather than evidence demonstrating an ability to perform work). While Plaintiff may not have engaged vigorously in her activities, such endeavors are not indicative of an individual incapable of performing any type of work. *See Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 173 (6th Cir. 2016) ("The ALJ contrasted Sorrell's ability to do daily activities with her reports of pain—noting that Sorrell is "able to prepare simple meals, perform various household duties with breaks, handle personal care, drive, and

10

shop"); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability).

Last, Plaintiff argues that the ALJ improperly relied on her own observations during the hearing. (Tr. 32). Namely, the ALJ discussed how Plaintiff was attentive to questioning, able to sustain conversation, and follow and respond to questioning without clarification and without confusion. Id. Plaintiff was able to recount important details of her medical and personal history and had no difficulty expressing herself. Id. The ALJ also did not observe any overt signs of anxiety, memory loss, or fatigue. Id. The ALJ recognized that the hearing was "short-lived" and could not be considered of a "conclusive indicator of [Plaintiff's] overall level of pain . . . or mental functioning" on a day-to-day basis, but reasonably noted that Plaintiff's presentation at the hearing did not comport with her allegations of total disability. *See Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010) (an ALJ is permitted to consider a claimant's demeanor at the hearing in judging disability); see also *Johnson v. Comm'r of Soc. Sec.*, 210 F.3d 372 (6th Cir. 2000) ("Although [the ALJ] . . . describe[ed] Plaintiff's demeanor at the hearing, the ALJ did not dismiss Plaintiff's claim of severe disabling pain solely on the basis of personal observations. . . . However, as just discussed, the ALJ provided a detailed analysis of Plaintiff's pain, assessing medical records, pain treatments, and daily activities. The ALJ's personal observation was one of several factors, not the sole factor, in determining that Plaintiff's pain was not disabling."). Here, the ALJ specifically stated that her observations did "not constitute substantial evidence" and were only given "slight weight." (Tr. 32). Such a finding comports with agency regulations and controlling law.

11

The Court "may not disturb" an ALJ's subjective symptom evaluation "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). While Plaintiff may disagree with the ALJ's subjective symptom evaluation, she fails to demonstrate a basis for overturning the finding, especially given the great deference that an ALJ's finding is entitled to on review. See *Walters*, 127 F.3d at 531. The ALJ followed the regulations and rulings when considering Plaintiff's subjective reports and reasonably found that her complaints were not fully credible. Accordingly, the ALJ's decision is substantially supported in this regard.

2. *Evaluation of Plaintiff's Mental Impairments*

Plaintiff argues next that the ALJ erred in evaluating her mental impairments. More specifically, Plaintiff argues that the ALJ erred by not specifying the degree of limitation in four functional areas: activities of daily living; concentration, persistence, or pace; social functioning; and episodes of decompensation. However, the agency revised its rules governing evaluation of mental impairments in January 2017, and the new regulations apply to the ALJ's decision in this case. See SSA, Revised Medical Criteria for Evaluating Mental Disorders, 81 12 Fed. Reg. 66138, 66147 (Sept. 26, 2016).

At steps two and three of the sequential evaluation process, the adjudicator assigns ratings in four areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(E). In rating these categories, the adjudicator uses a five-point scale: none, mild, moderate, marked and extreme. 20 C.F.R. § 404.1520a(c)(4). The new regulations explicitly define these terms. Id., § 12.00(F)(2). The regulations make clear that these ratings do "not necessarily reflect a specific type

12

or number of activities, including activities of daily living, that you have difficulty doing." Id., § 12.00(F)(3)(d).

An individual rating, therefore, is not in and of itself an RFC finding, but is an indicator that the ALJ must perform an additional individualized analysis to determine the appropriate parameters that capture the claimant's specific functional limitations. See 20 C.F.R. § 404.1520a(d)(3) ("If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.").

As noted by the Commissioner, the ALJ did in fact make explicit findings relating to mental impairments as required by the regulations. Namely, the ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitation in adapting and managing oneself. (Tr. 19-21). The ALJ followed the rules in 20 C.F.R. § 404.1520a and reasonably evaluated Plaintiff's limitations in each functional area.

Plaintiff further contends that the ALJ cherry picked the record and ignored abnormal findings regarding her mental health. Specifically, Plaintiff argues that while the ALJ points to observations which place the Plaintiff in a positive light, such as, "Thought content: appropriate to mood and circumstances, logical," she ignores notations that include observations such as, "[t]hought content: "extremely impulsively anger, violent and aggressive, easily overwhelmed, affected by any noise, yelling due to past abuse, and has assaulted customers in past." (Tr. 502, Exhibit B3F/5). Plaintiff further contends that the ALJ completely ignores the notations. "She [Plaintiff] absolutely needs to resign

13

today and file for SSDI," (Tr. 502, Exhibit B3F/5). "Currently working but advised her to resign today due to her safety and others," (Tr. 503, Exhibit B3F/6) (emphasis added). Plaintiff's contentions lack merit.

"It is well established that an ALJ is not required to "discuss every piece of evidence in the record to substantiate [his] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *see also Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (citations omitted). *See also Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) ("[W]e do not require an ALJ to discuss every piece of evidence in the record to substantiate the ALJ's decision."); *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 749 (6th Cir. 2011) (observing that a "deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case").

Here, the ALJ provided a lengthy evaluation of Plaintiff's mental impairments from July 2014 through October 2018. (Tr. 25-30). The ALJ explicitly cited the same pages from 2016 referenced above by Plaintiff, noting that the record indicated that Plaintiff reported having homicidal and suicidal thoughts, depending on her mood. (Tr. 27). While the ALJ did not recite the exact quote outlined by Plaintiff above, she clearly conserved such evidence. Moreover, the ALJ also noted that Plaintiff had normal behaving and psychomotor activity in February 2017. The ALJ also detailed that Plaintiff made significant progress in June and July 2018. In addition, the ALJ further noted that

14

treatment notes from October 2018 indicated that Plaintiff felt less stressed, was progressing towards her treatment goals, and being successful managing her symptoms by taking medication as prescribed. (Tr. 29).

Plaintiff also argues that the ALJ should have given more credence to the Global Assessment of Functioning (GAF) scores in the record. GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev.2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34.

However, as noted by the Commissioner, there is no "statutory regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 511 (6th Cir. 2006). "[A GAF] score may have little or no bearing on the subject's social and occupational functioning." *Id.*; see also *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) ("[N]o particular amount of weight is required to be placed on a GAF score."). The ALJ acknowledged the GAF scores in the record, but gave them little weight. (Tr. 33). The ALJ did not err in this regard.

Based on the foregoing, the undersigned finds that the ALJ complied with 20 C.F.R. § 404.1520a and reasonably evaluated Plaintiff's mental limitations. As noted above, if substantial evidence supports the ALJ's denial of benefits, then that finding must

15

be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky,* 35 F.3d at 1035. While Plaintiff may disagree with the ALJ, the ALJ's findings in this case were well within the zone of reasonable choices. *See McClanahan v. Comm'r of* Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006). The ALJ's decision is substantially supported in this regard. *See Longworth v. Comm'r of Soc. Sec*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

*3. Consideration of Plaintiff's physical impairments including Obesity*

Plaintiff argues next that the ALJ's RFC failed to properly evaluate her physical impairments. More specifically, Plaintiff argues that the ALJ failed to find that Plaintiff's obesity was a severe impairment and also failed to properly consider the effects of her obesity in accordance with SSR 02-01p. Plaintiff's contentions are unavailing.

For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. *See* 42 U.S.C. § 423(d)(1)(A); *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").

In her step-two finding, the ALJ noted that Plaintiff also had several impairments she found to be non-severe. (Tr. 18). In this regard, the ALJ noted, *inter alia*, that Plaintiff was obese. However, the ALJ found that there is no evidence that any of Plaintiff's non-severe impairments imposed more than minimal functional limitations on the Plaintiff's ability to perform work related activity. Notably, Plaintiff fails to point to any functional

16

limitations caused by her obesity. Accordingly, the undersigned finds that the ALJ's decision is substantially supported.

Regardless, even if the Court found the ALJ erred, errors at Step 2 of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at Step 2. *See Maziarz v. Secretary of Health and Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. § 404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone...." 20 C.F.R. § 404.1545(e).

In this case, the ALJ found several "severe" impairments, including a spine disorder, osteoarthrosis, hearing loss, a depressive disorder, a bipolar disorder, anxiety, a personality disorder, a post-traumatic stress disorder, and opioid dependency and therefore proceeded through the five-step sequential analysis. Even if there was an error, the ALJ's failure to consider Plaintiff's obesity as "severe" at Step 2 of the sequential analysis, will not necessarily require reversal or remand. Contrary to Plaintiff's claim, the ALJ also reasonably considered her impairments in combination. As stated above, the ALJ found that Plaintiff had several severe impairments. (Tr. 18). She also discussed Plaintiff's obesity, as well as several other alleged impairments, and explained her finding

17

that they were not medically determinable or severe impairments. (Tr. 18-19). Accordingly, the undersigned finds that the ALJ adequately considered all of Plaintiff's conditions in determining her RFC and therefore did not err at step-two of the sequential evaluation.

Furthermore, the ALJ's analysis also satisfied the requirements of SSR 02-01p.8 Though the ALJ did not discuss this ruling specifically, she considered Plaintiff's obesity, determined that it did not cause significant functional limitations. As noted by the Commissioner, the ALJ's RFC finding accommodated all of Plaintiff's physical restrictions. (Tr. 18-33). The Sixth Circuit has held that "[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006). Here, the ALJ considered obesity and also relied on the opinions of medical experts who assessed Plaintiff's functional limitations in light of her body habitus. This was not error.

Notably, Plaintiff fails to identify any specific physical limitations that should have been included in the RFC as a result of her obesity. As noted above, Plaintiff fails to allege that her obesity actually caused any functional restriction at all. It is Plaintiff's burden to show how her impairments affected her functioning during the time she alleges she was disabled. 20 C.F.R. § 404.1512. Plaintiff has not shown that her obesity caused greater limitations than those found in the ALJ's RFC finding.

The ALJ thoroughly examined the evidence in the record and determined that Plaintiff could perform a reduced range of light work. (Tr. 18-33). In coming to this conclusion, the ALJ considered the medical evidence in the record as well as Plaintiff's treatment history and her lack of compliance with treatment recommendations. Id. The

ALJ also considered the only medical opinions in the record regarding her physical limitations, those of the state agency reviewing physicians. Id. These two physicians opined that Plaintiff could perform a range of work consistent with the ALJ's RFC finding. (Tr. 104-33, 136-71). *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (holding that, under the Social Security regulations, the opinions of state agency medical consultants may be entitled to significant weight where they are supported by the record evidence); see also SSR 17-2p (replacing SSR 96-6p, effective March 27, 2017) ("MCs and PCs are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act."). Accordingly, the ALJ's decision is substantially supported in this regard.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                        *s/Stephanie K. Bowman*
                                        Stephanie K. Bowman
                                        United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ANGELA HAWK,

       Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

Case No. 1:20-cv-81

Cole, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

20